UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---------------------------------------------------------x
ELIZABETH CARTER,                                   :   CASE NO.:
                                                    :
       Plaintiff,                                   :   JUDGE:
                                                    :
vs.                                                 :   MAGISTRATE:
                                                    :
FAIRFIELD OAKS HOME OWNERS                          :   COMPLAINT
ASSOCIATION, INC.                                   :
                                                    :   JURY TRIAL DEMANDED
                                                    :
       Defendant.                                   :
---------------------------------------------------------x

## **COMPLAINT**

Plaintiff, Elizabeth Carter, by and through her undersigned counsel, hereby files this Complaint and sues Fairfield Oaks Home Owners Association, Inc. (hereinafter referred to as "Defendant") for declaratory and injunctive relief, actual and punitive damages, and attorneys' fees and costs, pursuant to the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* and state law and alleges:

### **INTRODUCTION**

1. Plaintiff Elizabeth Carter seeks relief for housing discrimination on the basis of disability arising from Defendant's refusal to provide reasonable accommodations that are necessary for Ms. Carter to use and enjoy her residence. Ms. Carter has a partially amputated foot and uses a walker for mobility. Additionally, Ms. Carter has diabetes and suffers from recurrent cardiac conditions. In 2015, Ms. Carter had four heart attacks. Ms. Carter has had ten (10) stents inserted into her heart. As a result of her condition, walking, standing, moving, grasping, and twisting maneuvers are difficult for Ms. Carter.

2.      As a result of her worsening limitations, simple and everyday tasks have become increasingly difficult and time consuming for Ms. Carter. For example, it now a substantial undertaking for Ms. Carter to use her keys to open her door. Ms. Carter enters and exits her residence through her back door. To alleviate the effects of her disability, Ms. Carter had a small awning installed on her back door so that she could open and close the door during times of inclement weather.

3.      The Defendant is a homeowner's association in Ms. Carter's condominium complex. In response to Ms. Carter's simple installation of an awning, Defendant has engaged in a campaign of discrimination. Defendant first demanded that Ms. Carter remove her disability-related awning. Ms. Carter retained an attorney who sent Defendant a certified letter stating that Ms. Carter was protected by the Fair Housing Act.

4.      In response to this letter, Defendant doubled down and threatened to unilaterally remove Ms. Carter's awning unless Ms. Carter paid a "one time" $300.00 fee. Quite simply, Defendant attempted to extort money from Ms. Carter because she asserted her rights under the Fair Housing Act.

5.      Defendant denied Ms. Carter's request for reasonable accommodation and subsequently retaliated against her when she asserted her rights under the Fair Housing Act. Defendant also engaged in negligent supervision of and training of its employees/agents, in violation of state law.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 3613(a)(1).

7. Venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Shreveport, Louisiana.

## PARTIES

8. Plaintiff Elizabeth Carter is a person of the full age of majority and a resident of Shreveport, Louisiana.

9. For almost eight years, Ms. Carter has resided at a condominium at Fairfield Oaks condominium complex ("the Complex") which is located at 3820 Fairfield Avenue, Shreveport, LA 71104. For almost three years, Ms. Carter has resided in Unit No. 39.

10. Ms. Carter is an individual with disabilities that substantially limit one or more life activities, qualifying her as disabled under the Fair Housing Act. Specifically, Ms. Carter has a partially amputated foot and uses a walker for mobility.

11. Ms. Carter also has diabetes and suffers from recurrent cardiac conditions. In 2016, Ms. Carter had four heart attacks. Ms. Carter has had ten (10) stents inserted in her heart. As a result of her disabilities and attendant limitations, walking, standing, moving, and twisting maneuvers are difficult for Ms. Carter.

12. Upon information and belief, Defendant is a non-profit corporation organized in the State of Louisiana and doing business in Caddo Parish, Louisiana.

13. Upon information and belief, at all times relevant to this Complaint, Defendant has been authorized to provide property management services at the Fairfield Oaks condominium complex, including implementing rental policies and procedures, trash procedures, and granting reasonable accommodation requests.

14. Upon information and belief, agents and/or employees of Defendant have acted as on-site

manager(s) of the Complex at all times relevant to this Complaint.

15. Upon information and belief, agents and/or employees of Defendant have authority to make decisions regarding the granting or denial of reasonable accommodation requests at the Complex.

16. Upon information and belief, at all relevant times the agents and/or employees of Defendant had authority to take the actions that are set forth below.

17. Upon information and belief, Defendant is an entity that set terms and conditions for housing at the Complex.

18. Upon information and belief, Defendant is an entity that provide services and facilities in connection with housing at the Complex.

19. Defendant are obligated to comply with the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and its implementing regulations, 24 C.F.R. § 100.1 *et seq.*, in regards to their ownership, legal responsibility for, and/or of management of the Complex.

## STATEMENT OF FACTS

### The Condominium Complex

20. The Complex, located at 3820 Fairfield Avenue, Shreveport, LA 71104, is a condominium complex. The Complex is composed of numerous units, a main office, a pool, and numerous parking spaces.

21. The Complex is a dwelling subject to the Fair Housing Act, 42 U.S.C. § 3602(b) and subject to no exception under 42 U.S.C. § 3603(b). The individual units at the Complex, including without limitation No. 39, are also dwellings subject to the Fair Housing Act ("FHA"), 42 U.S.C. § 3602(b) and subject to no exception under 42 U.S.C. § 3603(b).

22. This action concerns Defendant's refusal to grant Ms. Carter's reasonable accommodation request to install an awning on her property, Defendant's refusal to provide Ms. Carter with an accessible-designated parking space, and Defendant's subsequent retaliation against Ms. Carter for her assertion of her rights under the FHA.

Defendant's Refusal to Grant Ms. Carter's Reasonable Accommodation Request for an Awning

23. Ms. Carter resides in Unit No. 39, a two-bedroom and two bath condominium located on the first floor of the Complex.

24. Ms. Carter has resided in Unit No. 39 for approximately three years, pursuant to an agreement with her mother, Thais Tooke. Ms. Tooke owns Unit No. 39. Ms. Carter presently resides in Unit No. 39.

25. For multiple years, including through all of early 2018, Ms. Carter's neighbor in the Complex had an awning outside of his door. During approximately August/June of 2018, Ms. Carter's neighbor moved out of his condominium and gave Ms. Carter the awning. Ms. Carter had the awning installed in its current location over her back porch.

26. The purpose of the awning is to protect Ms. Carter from the elements as she attempts to enter her residence. Due to her worsening disability, the simple task of opening her door is laborious and time consuming for Ms. Carter.

27. On June 20, 2018, Defendant sent Ms. Carter correspondence demanding that she remove the awning from her condominium.

28. Following receipt of Defendant's correspondence, Ms. Carter retained counsel. On July 12, 2018, Mr. Carter's attorney sent Defendant a detailed, two-page letter.

29. The letter sent by Ms. Carter's attorney to Defendant outlined Ms. Carter's disability, her need for an accommodation, and the applicable requirements of the Fair Housing Act.

Unquestionably, this letter constituted a request for reasonable accommodation / modification under the FHA.

30.     Immediately after this letter was sent, Ms. Carter did not receive any formal response from Defendant as to her request for reasonable accommodation. However, Ms. Carter began to notice that the staff charged with enforcing condominium rules, such as the placing of trash bags for pickup, began to harass her regarding previously unenforced rules. Due to her disability, it is difficult for Ms. Carter to place her trash bags out on the street on a regimented scheduled early in the morning.

31.     On May 22, 2019, Ms. Carter received correspondence from Defendant's board of directors. Instead of granting Ms. Carter's request for a reasonable accommodation, Defendant demanded that Ms. Carter agree to "a ONE time fine of $300." Defendant's correspondence made it clear that it was not permitting Ms. Carter to keep her awning; instead, Defendant was demanding that Ms. Carter pay money in order to keep her disability-related auxiliary aid.

32.     On the second page of its correspondence, Defendant expressly threatened Ms. Carter. In its correspondence, Defendant stated "No response by June 14, 2019 gives Board of Directors indication that you are not interested in proposal and that they will have awning removed."

33.     Defendant's discriminatory correspondence and explicit threat caused Ms. Carter extreme emotional distress, anxiety, and mental anguish. Ms. Carter experienced concern that she was going to be forced from her condominium or that unauthorized personnel were going to trespass on her property and forcibly remove her awning.

34.     Based on concern and fear, Ms. Carter sought counsel specialized in civil rights. On June 4, 2019, Ms. Carter's new counsel sent Defendant correspondence demanding that Defendant not

take any steps to remove the awning. As of the filing of the instant action, Defendant has not responded to this correspondence.

35. To date, Defendant has not forcibly removed the awning. However, Defendant has given no indication that it has changed its policies, procedures, or practices. Ms. Carter remains gravely concerned that Defendant will forcibly remove her disability-related auxiliary aid without notice.

36. As a result of the facts set forth above, Ms. Carter has experienced emotional distress, anxiety, mental anguish, isolation, segregation, and depression. Upon information and belief, Ms. Carter has sought medical treatment for the mental anguish at issue in this case.

### Defendant's Refusal to Designate an Accessible-Designated Parking Space

37. Approximately two years ago, Ms. Carter requested that Defendant designate a single parking space near her condominium as "accessible" and that this parking space be either specifically marked for her usage or that it at least be limited to usage for persons with disabilities (which would include Ms. Carter).

38. An accessible parking space up front would benefit Ms. Carter because (1) it is along a shorter route from the parking space to her home; and (2) there is a curb cut that would make navigation safer and less precarious because Ms. Carter would not have to step up a curb with her unsteady gait while attempting to utilize a mobility device.

39. The purpose of curb cuts is to permit individuals who have mobility limitations to traverse an accessible route without physical barriers.

40. Defendant refused to grant Ms. Carter's request.

41. In fact, Defendant explicitly told Ms. Carter that she was not allowed to utilize the only accessible parking space in front of her unit because it was for "guests only." Defendant

threatened Ms. Carter with a $50.00 "fine" if she parked in the current accessible designated parking space.

42. During an in-person conversation about the need for an accessible parking space, Defendant's agent/representative stated that this was "Your problem" to Ms. Carter.

43. Instead of being able to travel along the route without physical barriers, Ms. Carter is forced to park in the rear of the building. This requires that Ms. Carter travel along a longer route. Additionally, this longer route contains a physical "step" which is extremely difficult for Ms. Carter to ascend or descend because she uses a walker.

44. Ascending or descending this step is even more difficult and precarious for Ms. Carter when she is carrying groceries or other goods.

45. By and through her attorney's correspondence dated June 20, 2018, Ms. Carter repeated and reiterated her reasonable accommodation request that she be granted an accessible designated parking space. Specifically, her attorney stated "Ms. Carter simply requests that she be designated a permanent handicapped spot in front of her unit."

46. Defendant denied this reasonable request.

47. In its correspondence dated May 22, 2019, Defendant stated "the Board stands by the offer to allow you permission to park in front of your unit/building during inclement weather."

48. Defendant's purported "offer" is wholly unreasonable. One of the primary purposes of an accessible designated parking space is to avoid having to walk long distances. The occasional ability to park her vehicle close to her residence due to inclement weather does not accommodate this need.

49. The other purpose of accessible designated parking space is to reduce the significant difficulty that Ms. Carter experiences navigating during inclement weather. However,

Defendant's offer that Ms. Carter can park in front of her "unit/building during inclement weather" is wholly unreasonable because it does not accommodate Ms. Carter's need to navigate to her vehicle during inclement weather. It is common knowledge that inclement weather can appear suddenly and without warning.

50. In denying Ms. Carter's request for an accessible parking space, Defendant completely failed to engage in an interactive request. By refusing to engage in an interactive dialogue, Defendant failed to learn about the basis for Ms. Carter's need for an accessible-designated parking space.

51. Upon information and belief, the accessible-designated parking space is not properly marked with the required signage and markings.

52. By failing to grant her reasonable accommodation request, Ms. Carter has experienced emotional distress, anxiety, mental anguish, isolation, segregation, and depression.

Defendant's Failure to Make its Rental Office Accessible

53. Ms. Carter also requires access to the main rental office.

54. Upon information and belief, Defendant maintains a rental office which is open to members of the public. This rental office is open during normal business hours. This rental office is open to members of the public who want to inquire about purchasing or renting a condominium.

55. Prior to the increase in her limitations, Ms. Carter would visit this rental office to pay her yearly condominium fee.

56. Upon information and belief, however, the route to the rental office contains one or more physical barriers to access. These barriers are a step and/or threshold that exceed 1/2 of an inch.

57. Upon information and belief, Defendant has also permitted bushes to grow into the required accessible route, blocking the route to the rental office.

58. Ms. Carter continues to desire to return to the rental office, but she is deterred from doing so until the physical barriers to access are modified.

59. By failing to modify the physical barriers to access, Defendant has failed to make its facility accessible to individuals with disabilities, including Ms. Carter.

### Defendant's Changes to its Trash Policy

60. Prior to Ms. Carter installing the awning, Defendant's employee would assist Ms. Carter by moving her trash from her porch to her street.

61. Upon information and belief, following the installation of her awning, Defendant instructed its employee to stop assisting Ms. Carter by moving her trash from her porch to the street.

62. Due to her disability, moving the trash on a regimented schedule early in the morning is difficult for Ms. Carter.

63. Upon information and belief, Ms. Carter called Defendant and spoke with an individual at the front desk. This individual informed Ms. Carter that its employee would no longer be permitted to move Ms. Carter's trash because it was on Ms. Carter's "private property."

64. Upon information and belief, given the above, the conduct of Defendant in ceasing to provide a service to Ms. Carter was an act of retaliation.

## CAUSES OF ACTION

### First Cause of Action
### (Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B))

65. Ms. Carter re-alleges and incorporates by reference all allegations in all preceding paragraphs.

66. Defendant has discriminated against Ms. Carter, an individual with a disability, by refusing to provide a reasonable accommodation(s), in violation of 42 U.S.C. § 3604(f)(3)(B).

67. Defendant failed to provide reasonable accommodations to Ms. Carter by refusing to grant her request to keep the awning on her property, by refusing to permit her to have an accessible parking space, by refusing to permit her to use the existing accessible parking space, by attempting to charge her a $300 "fine" for needing an auxiliary aid, and by failing to modify the accessible route to the rental office / failing to maintain that route in an accessible condition.

68. Defendant has discriminated against Ms. Carter with intentional, willful, reckless, and/or callous disregard for her civil rights as a person with disabilities.

69. As a result of Defendant's discriminatory conduct, Ms. Carter has suffered harms including anxiety, frustration, humiliation, embarrassment, disempowerment, segregation, fear, anxiety, mental anguish, emotional distress, invasion of privacy, and loss of autonomy. She has also suffered an invasion of her civil right to be free from housing discrimination based on her disability.

Second Cause of Action
(Retaliation and Interference under the Fair Housing Act, 42 U.S.C. § 3617)

70. Ms. Carter re-alleges and incorporates by reference all allegations in all preceding paragraphs.

71. Defendant, by reason of Ms. Carter's exercise of her rights under the FHA, has coerced, intimidated, threatened, or interfered with Ms. Carter's exercise of enjoyment of a right granted or protected by the Fair Housing Act in violation of 42 U.S.C. § 3617.

72. On June 20, 2018, Ms. Carter engaged in a protected activity by having her attorney send a written request for reasonable accommodation to Defendant.

73. In response to Ms. Carter's request for reasonable accommodation, Defendant proceeded to harass Ms. Carter regarding the placement and location of her trash cans.

74. In response to Ms. Carter's request for reasonable, Defendant threatened Ms. Carter with a "$300 fine" or with the unilateral removal of her awning, which was an auxiliary aid.

75. Defendant retaliated against Ms. Carter willfully and in reckless disregard of Ms. Carter's rights.

76. As a result of Defendant's conduct, Ms. Carter has suffered harms including anxiety, frustration, humiliation, embarrassment, disempowerment, segregation, fear, anxiety, mental anguish, emotional distress, invasion of privacy, loss of autonomy, and past and future legal expenses.

### Third Cause of Action
### (Negligent Training and Supervision)

77. Ms. Carter re-alleges and incorporates by reference all allegations in all preceding paragraphs.

78. Under Louisiana law, Defendant had a duty to avoid causing injury and harm to Ms. Carter.

79. Under Louisiana law, Defendant was negligent in the supervision and training of its employees and/or agents (including the board members), insofar as the supervision and training lapses provided Defendant's employees/agents with an opportunity to deny Ms. Carter's request for reasonable accommodation and to threaten Ms. Carter. These lapses were the proximate cause of foreseeable injury to Ms. Carter, to whom Defendant owes a duty of care.

80. Upon information and belief, Defendant provided its employees/agent with no training or inadequate training related to reasonable accommodation requests, individuals with disabilities, and the making of threats.

81.     By and through the actions of its employees/agents, Defendant breached its duty to Ms. Carter.

82.     But for the actions of Defendant and its employees/agents, Ms. Carter would not have suffered the injuries and damages that are at issue in this Complaint

83.     As a result of Defendant's conduct, Ms. Carter has suffered harms including anxiety, frustration, humiliation, embarrassment, disempowerment, segregation, fear, anxiety, mental anguish, emotional distress, and past and future medical and legal expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Elizabeth Carter respectfully requests that this Court enter judgment against the Defendant as follows:

A. Enter a declaratory judgment finding that the foregoing discriminatory actions and practices of Defendant violate the Fair Housing Act, 42 U.S.C. § 3601 *et seq.,* in accordance with 28 U.S.C. § 2201*;*

B. Enter a permanent injunction restraining Defendant, its agents, employees, and all other persons in active concert or participating with them from discriminating against Ms. Carter or against any other person with disabilities in violation of the Fair Housing Act, in accordance with 42 U.S.C. § 3613(c)(1);

C. Award general and special damages to Ms. Carter to fully compensate her for the injuries and losses caused by Defendant's discriminatory actions and practices, in accordance with 42 U.S.C. § 3613(c)(1) and state law;

D. Award punitive damages to Ms. Carter for Defendant's intentional, willful, and/or reckless acts made in callous disregard of her federally protected rights, in accordance with 42 U.S.C. § 3613(c)(1);

E.  Award Plaintiff reasonable attorneys' fees, costs, and other litigation expenses incurred in prosecuting this action, in accordance with 42 U.S.C. § 3613(c)(2), and

F.  Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues triable by jury under law.

Date: August 27, 2019

Respectfully submitted,

**BIZER & DEREUS, LLC**
*Attorneys for Plaintiff*

/s/ Garret S. DeReus
ANDREW D. BIZER (LA # 30396)
GARRET S. DEREUS (LA # 35105)
EMILY A. WESTERMEIER (LA # 36294)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email:  andrew@bizerlaw.com
            gdereus@bizerlaw.com
            ewest@bizerlaw.com